## Stine *against* Sherk.

To set aside a solemn instrument between parties, and convert it into an obligation of different purport, on the ground of fraud or mistake, the evidence of it must be what occurred at the execution of the instrument, and should be clear, precise, and indubitable. And it is error to submit the question of fraud, in such a case, to the jury, upon slight, trivial, parol evidence.

ERROR to Common Pleas of *Lebanon* county.

Casper Sherk and Anna his wife against Daniel Stine, administrator of Samuel Sherk.

This was an issue directed by the Orphan's Court to try the right of the plaintiffs to certain moneys, the proceeds of the estate of Samuel Sherk deceased.

*Lebanon County,* ss.

Daniel Stine, administrator of Samuel Sherk . deceased, was summoned to answer Casper Sherk and Anna his wife, of a plea of trespass on the case, on promises, &c.; and whereas, the said Casper Sherk and Anna his wife, by George W. Kline, their attorney, complain : for that whereas, heretofore, to wit, on the 5th day of January 1841, at the county aforesaid, a certain discourse was had, and moved by and between the said Casper Sherk and Anna his wife, and Daniel Stine, administrator of Samuel Sherk deceased, wherein a certain question then and there arose, whether the said Casper Sherk and Anna his wife were entitled to receive out of certain money in the court of Lebanon county, the annual interest on the sum of eighteen hundred and twenty-eight dollars and thirty-three cents; from the 6th day of June 1826, to wit : the sum of one hundred and nine dollars and seventy cents yearly, and the same sum for each year hereafter, during the natural life of the said Anna Sherk; and in that discourse the said Casper Sherk and Anna his wife then and there asserted and affirmed, that they were entitled to the annual interest on the aforesaid sum of eighteen hundred and twenty-eight dollars and thirty-three cents, from the 6th day of June 1826, during the natural life of the said Anna Sherk, to be paid out of the said money in court, which assertion and affirmation of the said Casper Sherk and Anna his wife, the said Daniel Stine, administrator of Samuel Sherk deceased, then and there denied, and then and there asserted and affirmed the contrary thereof, viz; on the day and year aforesaid, at the county aforesaid, in consideration that the said Casper Sherk and Anna his wife, at the special instance and request of the said Daniel Stine, administrator of

Samuel Sherk, deceased, had then and there paid to Daniel Stine, administrator as aforesaid, the sum of five dollars, lawful money; he, the said Daniel Stine, administrator as aforesaid, then and there undertook, and then and there faithfully promised the said Casper Sherk and Anna his wife, to pay the sum of ten dollars, of like lawful money, if he, the said Casper Sherk and Anna his wife were entitled to receive out of certain money, in the court of Lebanon county, the annual interest on the sum of eighteen hundred and twenty-eight dollars and thirty-three cents, from the 6th day of June 1826, viz;—the sum of one hundred and nine dollars and seventy cents yearly, and the same sum for each year hereafter, during the natural life of the said Anna Sherk. And the said Casper Sherk and Anna his wife, in fact say that they are entitled to recover out of the money in the court of Lebanon county, the annual interest on the sum of eighteen hundred and twenty-eight dollars and thirty-three cents, from the 6th day of June 1826, viz.: The sum of one hundred and nine dollars and seventy cents yearly, and the same sum for each year hereafter, during the natural life of the said Anna Sherk, to wit, at the county aforesaid, whereof the said Daniel Stine, administrator of the aforesaid Samuel Sherk deceased, afterwards, to wit, on the day and year aforesaid, at the county aforesaid, had notice, whereby he, the said Daniel Stine, administrator of Samuel Sherk deceased, became liable to pay, and ought to have paid, to the said Casper Sherk and Anna his wife, the sum of ten dollars, lawful money: yet the said Daniel Stine, administrator as aforesaid, not regarding his promise and undertaking, but contriving and intending to deceive and defraud the said Casper Sherk and Anna his wife, in this behalf, hath not as yet paid the said sum of ten dollars, or any part thereof, to him, the said Casper Sherk and Anna his wife (although often requested so to do), but hath hitherto wholly neglected and refused, and still neglects and refuses so to do, to the damage of the plaintiffs two thousand dollars, and therefore they bring suit.

The defendant pleaded *non assumpsit, nil debet,* payment with leave and the statute of limitations.

The plaintiff then gave the following evidence:

Rudolph Sherk sworn. I am the uncle of Samuel Sherk deceased. Abraham Sherk died in 1813. He left but one child—Samuel Sherk. He left a widow — Anna. She is married to Casper Sherk. He left a farm, which he and I owned together; it contained 275 acres; in this county. I own the farm now. I am the man who purchased the half that Abraham left. I purchased of Samuel Sherk. My brother died without a will. I paid this money to Samuel Sherk.

Deed, 6th of September 1825. From Casper Sherk and Anna his wife and Samuel Sherk to Rudolph Sherk. Acknowledged by Samuel Sherk on the same day, and by Casper and Anna his wife

13th of June 1826.  22d of August 1826, recorded.  Consideration $5505.  Casper and Anna his wife, her dower.

Plaintiff proposed to prove by this witness what was the agreement made by Samuel Sherk with his mother, for her conveyance of her right of dower—what he agreed to pay her, and how it was to be paid.  To this evidence so offered, counsel for defendant objected, on the ground that the counsel for plaintiff had stated in his opening that a bond was given, and that it is so stated in the declaration; 2d, that the defendant had declared on a bond, and that this was not evidence under the pleadings.  The court overruled the objections, and admitted the evidence.  It does not appear to the court judicially that any bond was ever given.  This is a feigned issue, and the declaration is a wager, and therefore it is evidence. Counsel for the defendant excepted to the opinion of the court on the admission of the evidence.

Witness.  I saw a bond given to Ann Sherk for this money.  I saw it a long time afterwards.

Bond, 6th of June 1826, from Samuel Sherk to Anna Sherk, for $1828.33, and given in evidence.

Know all men, by these presents, that I, Samuel Sherk, of Jackson township, Lebanon county, and state of Pennsylvania, am held and firmly bound unto Anna Sherk, of Jackson township, county and state aforesaid, in the sum of one thousand eight hundred and twenty-eight dollars and thirty-three cents, good and lawful money of Pennsylvania, to be paid to the said Anna Sherk, or to her certain attorney, executors, administrators, or assigns; to which payment well and truly to be made and done, I bind myself, my heirs, executors, and administrators, and every of them, firmly by these presents.  Sealed with my seal, dated the sixth day of June, in the year of our Lord one thousand eight hundred and twenty-six.

Whereas, Abraham Sherk died intestate, leaving a widow, named Anna, and issue, one son, named Samuel, (both above named,) seised of a certain plantation and tract of land, situate in Bethel township, Lebanon county, which said tract was, after the death of the said Abraham Sherk, sold by the said Anna Sherk and Samuel Sherk, unto Rudolph Sherk, at and for the sum of five thousand four hundred and eighty-five dollars : And whereas, the said Anna Sherk having released all her interest whatever in the said plantation or tract of land, so sold as aforesaid, and having given unto the said purchaser a good and lawful title, without any incumbrances :

Now the condition of the above obligation is such, that if the above bounden Samuel Sherk should survive the said Anna Sherk, or die (before her) with lawful issue, then the above obligation to be void and of none effect, otherwise to be and remain in full force and virtue.  S. SHERK. [SEAL].

*Witness*—P. BATDORFF.

Witness again. The bargain between the parties was, that she was to take her thirds out of this farm, and lay it upon Samuel Sherk's other farm below; and she was to draw her thirds, or amount, out of that farm. Mrs. Sherk cannot write or read English. The third was to be laid on that farm below. Nothing said about interest. It was at my house. The third was to be laid on that farm below, and I was to get a clear deed. They thought it as safe on that farm as here. Her third was to remain a lien on that place, and she was to draw her third as she did before. This agreement was made before and at the same time she made the deed to me.

Cross-examined—Samuel Sherk has left six children. I am their guardian. Samuel Sherk's mother is still living. Samuel's wife is dead. It was said the third was to be taken from this farm and laid on the farm bought from Simons, near Myerstown. It was not said how much she was to draw. She was to draw her money just the same as when it was up here. The widow said something about interest. Samuel Sherk was present when she said this. They did not say how much a year it was. It was to be paid to her the same as if it had been left on the other place. I was not present when the bond was given. I saw the bond two or three years ago. It was before Samuel Sherk died. I think she had the bond in her possession. She and her husband showed me the bond. She said this was her third bond. She said Samuel did not pay up as she wished; she wished he would pay her. That conversation took place about laying it on the other land, took place before and at the time of the agreement for the land. Samuel Sherk was not by when they showed me the bond. This conversation took place when the deed was made to me. She lived with her son Samuel about two or three years. She and her husband lived at Myerstown when this agreement was made. She said there must be a writing made, and it must be put on the lower farm. I do not know Samuel's paying any of this to her during his life.

The counsel for the defendant objected to the evidence of this witness, as given in chief, and as it was offered. The court overruled the objection and admitted the evidence. The counsel for defendant excepted to the opinion of the court.

It also appeared in evidence that Samuel Sherk died insolvent.

Charge of the Court:

This is an issue, directed by the Orphans' Court of this county, to try the right to certain money in the hands of the administrators. It is not to be disguised but that this is a controversy between the creditors of the deceased and the plaintiffs in this issue. To authorize the plaintiffs to recover a verdict, they must clearly make out their claim with the same strength of testimony that they would be compelled to if a suit had been brought in a court

[Stine v. Sherk.]

of law by the plaintiffs against the defendant, as administrator of Samuel Sherk, deceased.

Certain points have been submitted to the court by the defendant's counsel, which probably present most of the legal questions which arise in the cause—at least the defendant's view of it.

The first is, " That inasmuch as a bond was executed between the parties in this case, dated 6th of June 1826, which bond has not been forfeited, and no payment is due thereon, the plaintiffs are not entitled to recover, if the said bond was the final consummation of the agreement of the parties relative to the conveyance of the land, which has been proved on the part of the plaintiffs."

In answer to the first point, the court instruct the jury that the law is therein correctly stated, and therefore answer it in the affirmative.

Second point. " That the law will consider and adopt the said bond as the agreement of the parties, unless there be evidence of fraud or mistake, and it is incumbent on the plaintiffs to show that."

In answer to the second point thus submitted: that it is correct, so far as it goes, and it is answered in the affirmative, with these further remarks: Should the jury believe from the facts, that this bond does not contain all the conditions that were intended to be inserted therein, nor the same that the parties contracted should be inserted in the bond, then the bond would not be considered as containing the whole contract of the parties. Should the jury be satisfied, from the whole testimony in the cause, that an agreement different from the one inserted in the bond was entered into by Samuel Sherk, deceased, with his mother, and that when the bond was given to her she was imposed upon, a fraud was practised upon her, and she took the bond, supposing that it—supposing that the bond contained a condition or security for paying to her the annual interest on the sum of $1828.33, and that the bond was given to secure this sum with its annual interest unto her during her life, when in truth it does not; then in that event it would not be a consummation of the contract; the bond standing alone would not then be the agreement of the parties, as it would appear on its face, but further matter is to be inserted. Fraud vitiates every thing, and destroys a bond or any other contract, and many times changes its whole form and effects, and creates other obligations that are not inserted, if they ought to have been. But fraud and imposition must never be presumed. The jury should have very clear evidence upon the subject, before they attempt to set aside a bond, or other written agreement of the parties, or to *reform* it, and introduce another provision different from what appears on its face, as you are asked by the plaintiffs' counsel to do here, and as you must do to entitle them to your verdict. (The court will read the whole evidence to you on that subject.) Do these facts convince your minds

[Stine v. Sherk.]

that this woman, Anna Sherk, did not consent to take this bond as it appears to be on its face? Was there any fraud practised upon her, or imposition? was there any mistake? Did she ever intend to charge her son with the interest annually? Did she ever claim it in his lifetime, or was there any thing paid? Both admit that no interest was ever paid. All these are matters purely for the consideration of the jury. The case turns upon the question of fraud and imposition practised upon the plaintiffs, or a mistake in drawing the bond, as understood by the parties. Of this you must be clearly convinced, before you can find for the plaintiffs. If you are clearly convinced of it, the plaintiffs can recover. On the bond, as it now stands, judging from its written import alone, the plaintiffs have no cause of action. To entitle the plaintiffs to a verdict, you must be convinced of the fraud, or mistake, and reform and alter the conditions of the bond, and that too upon the principle that a different condition was intended to be inserted, and by the mistake of the scrivener, or by fraud and imposition, it was omitted. Upon principles of equity a bond can be reformed, and in Pennsylvania through the intervention of a jury. Whether it ought to be, the jury must decide from the facts, upon the principles which I have above stated to you as a guide and direction.

The third point is—" That even supposing a parol agreement existed in this case, upon which a recovery might have been had if prosecuted in due season, yet inasmuch as more than six years elapsed before any proceeding to recover under the said supposed agreement, the statute of limitations interposes a bar, and the plaintiffs cannot recover."

In answer to the third point, the court instruct you that the plaintiffs cannot recover on any parol contract; the statute of limitations is a perfect bar to their claim. But if the jury should be of the opinion that there was a mistake in drawing the bond, or fraud in its delivery and receipt of the same by the plaintiffs, and the jury should think the bond should be reformed in its conditions, in pursuance of the original agreement of the parties, and they find for the plaintiffs on that ground, the statute of limitations would be no bar, upon the principle that what ought to have been done, equity will consider as done at the time, and forming a part of an instrument under seal.

The whole case turns upon the question of fraud, or mistake, in the drawing or delivery of this bond. Should the jury find for the plaintiffs, they cannot give interest on the annual interest, but only the interest on the $1828.33 annually, from the execution of or date of the bond. But if they are satisfied that there was no fraud or mistake in the execution of the bond, their verdict should be for the defendant generally.

The counsel for the defendant excepted to the charge of the court.

[Stine v. Sherk.]

Errors assigned:

1. The court below erred in admitting evidence of a parol contract between Samuel Sherk and his mother, as set forth in the first bill of exceptions.

2. In admitting the evidence of Rudolph Sherk, as set forth in the second bill of exceptions.

3. In their answers to the second and third points of the defendant below.

4. In their charge to the jury; they should have instructed the jury that, from the testimony in the cause, the plaintiffs were not entitled to recover.

*L. Kline* and *Pearson*, for plaintiff in error.

The evidence offered went to prove a parol contract in direct opposition to the condition of the bond, and therefore should not have been received. 4 *Bro. Chan.* 518; 7 *Vez.* 217; 1 *Johns. Chan.* 429. But what was the agreement attempted to be proved? That she was to have her dower fixed upon another farm: what amount does not appear: the uncertainty avoids it. 6 *Vez.* 328. Evidence which goes to set aside a written contract must be so certain as to leave no doubt of what the agreement was. 5 *Wheat.* 459; 7 *Watts* 517; 5 *Serg. & Rawle* 431; 3 *Stark.* 1019.

*M'Clure*, for defendant in error.

It is too clearly settled that fraud and mistake in the making of an agreement between parties, may be corrected by parol evidence, and that fraud is a matter of fact to be referred to a jury. Do not the facts in this clearly show such fraud or mistake as justified the charge of the court, and verdict of the jury? It appears the widow was entitled to her dower in the land conveyed, and she joined in that conveyance in consideration of there being secured to her the interest upon one-third of the purchase money. The proof is that the parties agreed it should be secured on another tract of land, and that the same land the proceeds of the sale of which are now in court. The bond does not thus secure it, and the cases clearly show that the plaintiffs' right may be established by parol proof of the fraud or mistake. 10 *Watts* 397, 104; 1 *Story's Eq.* 173, *Pl.* 161; 4 *Johns. Chan.* 144; 2 *Atk.* 389; *Newland on Cont.* 349.

The opinion of the Court was delivered by

SERGEANT, J.—The plaintiff, with the bond in her possession, has suffered more than fourteen years to elapse, without making a demand of the annual interest, and without resorting to any legal proceeding against the son to recover it. After the event has occurred of the death of her son, leaving lawful issue, by which the bond has, according to its condition, become void, the effort is to change it into another and totally different agreement. To set

I. — 26

[Stine v. Sherk.]

aside a solemn instrument between the parties under such circumstances, and to convert it into an obligation of so different a purport, the evidence of fraud or mistake ought to be of what occurred at the execution of the bond, and should be clear, precise, and indubitable. Fraud is not to be presumed from vague and slight conjecture, or supplied by notions of fancied equity. If, under pretence of reforming an instrument, loose parol declarations are received to substitute another contract in lieu of it, the rights of property would rest on a frail and precarious foundation.

There is no ambiguity in the bond or its condition, nor does there seem to be any thing unfair or unreasonable in the transaction itself. If the plaintiff was herself in good circumstances, and able to do without the money, she might well choose not to exact it from her son or his descendants, and agree to demand it only in case of their right passing to others during her lifetime. She might even have gained a benefit by the arrangement, had events turned out differently. For if Samuel had died within a year or two without leaving issue, the plaintiff might, under the bond, have claimed the whole sum of $1828.33 as her own, in lieu of her original right to the interest of that sum during her life. But events turned out otherwise. Her son Samuel lived till November 1838, and then died, leaving six children; and the effort now is, to change entirely the condition of the bond, to make the bargain to have been for the interest. No mistake of the scrivener is shown, in drawing the bond differently from his instructions; no evidence is given of what passed at the execution of the bond, to show fraud or imposition by the son on his mother. Rudolph Sherk, the only witness called on the subject, speaks of an agreement made before and at the time she made the deed. But the deed is dated on the 6th of September 1825, and the bond was not executed till the 6th of June 1826, and we have no evidence of any thing being said at the execution of the bond, which is the material point of time. For it is a rule well settled, that where an agreement is made and concluded, and solemn instruments executed between the parties, previous conversations and negotiations on the subject are to be considered as merged in the final agreement, and therefore the bond is to be considered as expressing the deliberate and ultimate contract of the parties. Even the agreement spoken of by Rudolph Sherk goes too far to be consistent with any view of the subject; for he says that the widow's third was to remain a lien on another farm which it seems belonged to the son by purchase. It could hardly be pretended that such a lien can be created by this sort of evidence. As to what Mrs. Sherk said of her not getting her interest, it consists merely of her own declarations, and they are certainly not evidence that can change the former contract, and alter the condition of the bond.

We are of opinion that the evidence in this case was entirely

[Stine v. Sherk.]

too slight to leave it to the jury to presume fraud or mistake, and thus annul the condition of the bond, and that the judgment must be reversed.

Judgment reversed, and a *venire facias de novo* awarded.