## ZENTMYER et al. *v.* MITTOWER.

Where articles stipulated for certain reservations to the grantor for life, and the payment of a sum of money at his death, and a deed was executed subject to " the reserves mentioned in the article," during the grantor's life only, the deed and articles if construed together, create no lien or charge for the purchase-money.

A., having entered into articles by which plaintiff was to purchase land under certain reservations to A. for life, and the payment of money at his death, executed a deed charging the reservations only on the land. When about to deliver it, defendant, or some one in his presence, urged the delivery, saying, " you have your right in the land, you have the article to show against the deed," held not to be sufficient evidence to induce the court to reform the deed, and charge the estate, with the purchase-money, of which defendant had become the owner, although he had notice of the claim.

Purchase-money payable *in futuro,* is no lien in Pennsylvania, after delivery of a deed of conveyance.

Misrepresentation, whether wilful or accidental, is a ground for reforming a deed or contract; but it must be of some material fact which the party might have placed confidence in, and not an opinion; unless there be peculiar circumstances of contrivance or abuse of confidence reposed. And it must be shown, that the complaining party acted on the misrepresentation or mistake induced by the party seeking to bind him by the written evidence.

It seems such misrepresentation, to be binding, must, in ordinary cases, assume the character of a contract.

In error from the Common Pleas of Franklin.

*June* 10. Ejectment to enforce articles of agreement. Zentmyer, the plaintiff, showed articles of agreement between himself

and C. Zentmyer, by which, in consideration of $6000, and for divers things thereinafter mentioned, it was witnessed he had conveyed in fee certain land to the plaintiff, Zentmyer, with covenant for further assurance, "by his performing the following duties;" then followed a stipulation, that the grantee should put up certain buildings on the premises, which the grantor and his wife were to occupy, together with two acres of ground, during their lives, and were to be furnished with specified quantities of produce, &c., "in consideration thereof, the said (grantee,) for himself and his heirs, did covenant to pay to (the grantor) $6000, in manner following," viz.: his debts due Henry Harbaugh; those due Jacob, a son of the grantor; the interest on the residue to the grantor and his wife for life, and at their deaths, the principal equally among his children, (of whom plaintiff was one) and his grandchildren, *per stirpes*. After the death of the grantor, the "duties" and "things reserved" were to cease, and become the property of the plaintiff, and the parties mutually bound themselves and their heirs, in a penalty of $1200 to comply with this agreement. The plaintiffs then showed a deed from C. Zentmyer to the plaintiff, Zentmyer, in fee, *habendum*, "subject to the claims of the Commonwealth, and the reserves mentioned at large in an article now lodged, &c., which reserves are to continue during the natural lives of the said (grantor and his wife,) and no longer." The grantor and his wife were dead, and the title of the children vested in the plaintiffs, one of whom was also administrator of the grantor's widow. The person who drew the deed was also dead. The parol evidence on which the plaintiff relied will appear more regularly after the defendant's title is stated. This was a judgment confessed by the grantee to Jacob Harbaugh, to the use of the present defendant, three days after the date of the articles, which, with another to himself, were admitted to be in pursuance of the articles, and in lieu of securities of the grantor held by Harbaugh. On this judgment there had been an execution and sale of the land to one of the present defendants, before the death of the grantor and his wife.

Before and after the defendants' title was shown, the plaintiffs offered to read the evidence of Jacob Zentmyer, the grantor of one of the plaintiffs, which was rejected because it was an attempt to alter the effect of a deed by parol evidence. This was, that the defendants, one of whom was the plaintiff in the judgment under which the land was sold, and their brother, were all present when the grantor delivered the deed to Zentmyer, one of the present plaintiffs; the parties had come to town to satisfy a mortgage held by the father

of the Harbaughs against the grantor. They applied to counsel, but what was their agreement witness did not hear, except that judgments were to be given. Henry Harbaugh (a defendant) then said the mortgage was satisfied, and grantee (the plaintiff) had given his judgments and was to pay that claim. The plaintiff then demanded his deed, and old Zentmyer looked all round, and did not know what to do. George Harbaugh said—yes, you have to give the deed to Daniel, (the present plaintiff,) you have the agreement, the deed belongs to him, and you have the agreement to show against the deed; the deed was then delivered, and Henry said, "Now it is all fixed, you (the grantor) are clear, and there is nothing against you of us." He added, "when G. Harbaugh said, that Daniel should have the deed, he said to my father, (the grantor,) you have your right in the land, and you have your agreement to show against the deed." The witness had a claim against his father which he gave up, and received $5 from the grantee, and a judgment for the balance.

This evidence being rejected, the plaintiffs gave evidence, that at the sheriff's sale to defendants, notice was given that the grantor, his wife and heirs, had a lien on the land, (this was contradicted;) and that more would have been given for the land than it brought but for the supposed lien. It was admitted there were no breaches of the covenants, relating to the rights reserved to the grantor and his wife during their lives, other than as to payment of interest; and as to that it appeared from the paper-book that no evidence was given.

The court (BLACK, P. J.) directed a verdict for defendants, which instruction, with the rejection of evidence, was assigned for error.

*Bard* and *Thompson*, for plaintiff in error.—The question is, whether George Harbaugh bought the land divested of the balance of the lien, which old Christopher Zentmyer had against it, for the purchase-money, after his debts had been paid out of the same. The article of agreement contemplated, that the land was to be bound for the payment of the purchase-money according to the stipulations and conditions therein mentioned and contained, and yet the deed was prepared, drawn, and executed, without binding the land, and without any security for the payment of the purchase-money. There was then evidence that the scrivener made a mistake in drawing the deed. A most material condition in the article is omitted. The scrivener unfortunately is dead.

Since Kauffelt *v.* Bower, 7 Serg. & Rawle, 64, no lien is retained after deed given and bonds taken, but the present case is not within the rule, as bonds were not taken. In the same case, Duncan, J.,

says, ejectment is the proper remedy to recover a lien when no other action can be brought. Is the balance a lien upon the land? Here the deed was delivered under a misapprehension, and no innocent purchaser has intervened. George Harbaugh was not only present at the transaction, but advised it, and had full notice of it afterwards. He also urged and recommended the delivery of the deed. Was not the payment of the money and interest a condition subsequent? No particular form of words are necessary to create a condition; Shep. Touch. 121, 122; Bear v. Whisler, 7 Watts, 144. It is clear, that the payment of the interest during the lives of the grantor and his wife, was a condition both by the article and deed. Was the payment of the principal a condition by the article? If the deed does not carry out the whole condition contained in the articles, can the deed be considered as reformed by the evidence so as to contain the proper condition? Here the evidence to make out the mistake is sufficient. The delivery of the deed without security, and what passed when it was delivered, all show that the parties had not altered their intentions as expressed in the articles; and this is more than is required to reform a joint bond. The rule is, that whenever a mistake, through either error or fraud, is committed by the person who draws the instrument, courts of equity will reform it; Hurst v. Kirkbride, stated in 1 Binn. 616, commented on in Wallace v. Baker, 5 Serg. & Rawle, 425; Tyson v. Passmore, 2 Barr, 122. George Harbaugh was interested in the title; and he represented to Christopher Zentmyer, that his money was in the land; that he had the article of agreement against the deed, whereupon the old man gave up, or delivered the deed to Daniel. Had he known the falsity of the representation he never would have parted with his deed. George Harbaugh is therefore bound to make good the injury suffered by the grantor through his misrepresentations. He practised a fraud upon him.

Jacob Zentmyer's testimony was admissible to show a contract between the parties, and that the article was not merged in the deed; Byers v. Mullen, 9 Watts, 266; Selden v. Williams, Ibid. 9; Lee v. Dean, 3 Whart. 316. Notwithstanding a conveyance, a lien may remain on the land by consent of the parties, which otherwise by operation of law would be extinguished; Roberts v. Williams, 5 Whart. 170; 16 Serg. & Rawle, 163; 13 Serg. & Rawle, 167; 5 Whart. 541. It was also admissible to show what took place at the time of the execution of the deed. The scrivener mistook his instructions, no matter whether wilfully or by accident; Moliere v. Insurance Co., 5 Rawle, 346; Stubbs v. King, 14 Serg.

& Rawle, 206. It was admissible on the ground of misrepresenta-tion; Hunt *v.* Rousmaniere, 1 Peters, 1.

*Denny,* contrà.—It will be a new doctrine here, that an action of ejectment can be brought and sustained for the purchase-money of land, where the full and perfect title has been parted with. This is not the case of a conditional estate; Bear *v.* Whisler, 7 Watts, 144. A condition must be created by technical and apt words; Cook *v.* Trimble, 9 Watts, 15; Hepburn *v.* Snyder, 3 Barr, 72; 30 Law Lib. 161, 235; Shep. Touch. 121. The words in the deed are neither conditions nor covenants, but reservations which give no remedy by ejectment, and only by distress. Conditions are not favoured, but covenants are. But if this money is among the *reserves* and a *condition;* and if the annuity to the grantor and wife was not limited to their lives by the words of the articles, still the heirs could not enter for a breach in their lifetime; Shep. Touch. 148, 150. The deed is the consummation of the contract unless there be fraud or mistake, and merges the articles; 1 Watts & Serg. 83. The deed gives a meaning to the word *reserves,* and limits them to the life of old Christopher Zentmyer and wife, and no longer, and contains a receipt for all the money, viz. : $6000; 2 Serg. & Rawle, 500. The intent, as expressed in the articles, was to pay Harbaugh first; but if this is a condition, it gave him no security at all. Now, a condition cannot be reserved to a stranger, and Harbaugh would then lose his money, unless he gets this judgment; Shep. Touch. 149, 155. It is only the balance that is reserved, and there is none. A deed accepted by the vendee of the articles of agreement, is to be considered as express-ing the ultimate intent of the parties, although it differs in some respects from the articles; unless there have been fraud or misap-prehensions; Crotzer *v.* Russell, 9 Serg. & Rawle, 78; Anderson *v.* Long, 10 Serg. & Rawle, 55.

Jacob Zentmyer, called to contradict the receipt in their own deed, which was offered in evidence as part of their case, was a grantor, and under the late decisions, no witness. Real estate is more important to be guarded than personal; its title should rest on written evidence, and the law, moreover, requires a record of it. His testimony did not prove any thing material, and was therefore irrelevant. If any thing was to be proved by him, it was in con-tradiction to the deed, and the present defendant was no party to the conveyance, but a stranger to it; Heilner *v.* Imbrie, 6 Serg. & Rawle, 401.

*June* 21.   BELL, J.—Apart from the parol testimony rejected
by the court below, (to be presently considered,) there is nothing
in the case to show it was the intention of the parties to carry into
the deed of conveyance by Christopher to Daniel Zentmyer, all the
covenants contained in the articles of agreement of the 11th Sep-
tember, 1815; but if, upon the ground that, through mistake, the
deed was not a full and complete execution of the contract of the
original parties, we consent to construe the article and deed as one
instrument, it is clear the covenant of Daniel to pay, in a particu-
lar way, the purchase-money of $6000, was a personal covenant,
involving nothing beyond the personal liability of the covenantor.
Unlike what are called in the deed, "the reserves," which were to
continue during the lives of the grantor and his wife Barbara, and
in Herbaugh *v.* Zentmyer, 2 Rawle, 159, ascertained to be in the
nature of a rent bound upon the land in the hands of the assignor,
by virtue of a real covenant, there is nothing in either instrument
to indicate any intention that the purchase-money, properly so
called, should constitute an encumbrance on the estate granted to
David, or in any way qualify it.   On the contrary, the express
provision of the deed, that the land conveyed should pass, "*subject*
to the claims" of the Commonwealth, and other reserves mentioned
in the article, negative the existence of such an intent, upon the
maxim *expressio unius est exclusio alterius.*   In this respect the
case is stronger against the pretensions of the plaintiff than Hep-
burn *v.* Snyder, 3 Barr, 72, where the grantee agreed, by the very
terms of the conveyance to him, to take the estate subject to the
debts, encumbrances, charges, and responsibilities of the grantor,
which, however, was held to amount to but a personal covenant;
and it is unlike Bear *v.* Whisler, 7 Watts, 144, where the estate
was conveyed *subject* to the conditions and obligations contained in
the previous articles of agreement, stipulating *inter alia*, the pay-
ment of purchase-money to certain persons at particular times, which
was decided to create an estate on condition.   The line of distinc-
tion drawn by the parties, between the covenant which stipulated
an annual rendition of things, issuing out of the land itself, and
that which provided for the payment of a sum in gross, has nothing
in it unusual, or that ought to subject it to the challenge of doubt,
as inexpressive of their understanding of the premises.   It is, in
itself, perfectly natural and entirely consistent with the mode
usually pursued in this state, in such cases, to charge that which
partakes of the nature of rent, upon the land itself, by the terms
of the conveyance, while the payment of purchase-money *in futuro*

is rested upon the personal ability of the grantee, secured by a pledge of the land in mortgage, or by encumbering it by the lien of a judgment.

The plaintiff, conceding all that has been said, seeks to avoid it by claiming to reform the articles and deed, considered as one instrument, upon the introduction of parol proof, not that from mistake or fraud any thing was omitted in these instruments, which it was intended to insert, but that, as he avers, the grantor was induced to deliver the conveyance from a misconception of the legal effect of the articles, and perhaps of the deed itself, touching his remedy for enforcing payment of the purchase-money; a misconception originating in the misrepresentation, not of the grantee, but of George Harbaugh, one of the present defendants. The court below rejected the evidence offered for this purpose, and whether this was right or wrong is the only question presented by the record, for, if right, the subsequent direction to the jury to find a verdict for the defendant was entirely correct. As an exception to the general rule, parol evidence is, under certain restrictions, admissible to control a written instrument, where either more or less has been expressed than the parties intended, or where one of them, relying upon a misrepresentation of a material fact, by another interested in the transaction, has been induced to do something he otherwise would not have done, and this whether the misrepresentation be wilful or unintentional, if, under the circumstances, it would be unconscionable in the person making it to take advantage of ignorance abused by his own mistake or falsehood. But there are certain conditions essential to the competency of such evidence. Of these, a primary one is, that it must tend to show a misrepresentation, not only in a material fact, but in something in regard to which the one party, of right, places trust and confidence in the other. Ordinarily, it must not be in mere matter of opinion, equally open to both parties for examination, where neither party is presumed to trust the other, though, certainly, even here, under peculiar circumstances of contrivance or abuse of confidence, naturally reposed, equity will relieve; 1 Story's Eq. 213, § 197.

The rule just stated is peculiarly applicable to opinions hazarded as to the effect of legal documents, where the parties stand on an equal footing, for they are not presumed to be misled where each have equal means of information. It follows, that it is not every misrepresentation that will avoid or control a contract, for if it be of such a nature that he to whom it is made has no right to rely upon it, it is his own folly if he act under a deception; and, as it is

said, courts of equity will not aid one who refuses to exercise his own sense and discretion, where it is incumbent on him to do so; Hunt v. Moore, 2 Barr, 108. Another of these conditions is, that the parol evidence of fraud be of such a nature, as distinctly to establish the fact, that the action of the injured party was simply the result of the mistake or misrepresentation of one who seeks, unfairly, to avail himself of it; Miller v. Henderson, 10 Serg. & Rawle, 290; Haine v. Kalbach, 14 Serg. & Rawle, 159; Clark v. Patridge, 2 Barr, 13. To this effect it should be clear, explicit, and indubitable, leaving the mind free of doubt; for if it be so loose and unsatisfactory as to lead to no certain conclusion, it ought not to be received to control or modify a writing, and more especially solemn instruments such as those now in question, executed with all the formalities of the law; Stub v. Stub, 3 Barr, 251. As is said by Mr. Justice Rogers, (in Farmers and Drovers' Bank v. Fordyce, 1 Barr, 457,) we must hold a tight rein on such testimony, otherwise great mischief will result, rendering titles to property very uncertain and doubtful. It is the remark of another learned judge, which recommends itself to our acceptance by its good sense, "that if, under the pretence of reforming an instrument, loose parol declarations are received to substitute another contract in lieu of it, the rights of property would rest on a frail and precarious foundation;" Sergeant, Justice, in Stine v. Sherk, 1 Watts & Serg. 202. Indeed, I am inclined to think, that to make a misrepresentation or mistake available against the express terms of a. conveyance, it ought to assume the character of contract, as in Flagler v. Pleiss, 3 Rawle, 345; and Tyson v. Passmore, 2 Barr, 122. In the latter case, upon which the plaintiff in error principally relied on the argument, the peculiar feature was, that the purchaser, trusting solely to the representation of the seller as to the supposed efficacy of the warrant of survey, was induced to buy and pay for the whole tract of two hundred and sixty acres, comprised within the lines of the old draft. The contract was distinctly and unequivocally shown by the evidence offered, and that both parties had acted upon it. It was, therefore, justly held a fraud in the vendor, afterwards to acquire, and in violation of his agreement, attempt to hold adversely, the excess above the seventy-five acres, called for by the warrant. Confined within the limits prescribed by these cases, the reception of oral testimony may perhaps be safely indulged, but we must not be seduced by considerations of supposed hardships, to pass beyond them.

If we test the parol proof offered in the case at bar by the prin-

ciples I have stated, it will be found the court below was right, beyond question, in rejecting it. It possessed not one of the requisites essential to the validity of such evidence. A short review of the facts will, I think, make this apparent. The Zentmyers, father and sons, had come to the town of Chambersburg for the purpose of completing the transaction, which, two years before, had its inception in articles of agreement, by a conveyance of the land to Daniel. The deed for this purpose seems to have been prepared, signed, sealed, and in the possession of the father, ready for delivery, immediately on the completion of the arrangement before made, respecting the liens then a burden on the land. George, Jacob, and Henry Harbaugh, accompanied the Zentmyers, not for the purpose of supervising the transfer of the land, with which they appear to have had no other connection than as the agents of their father, an encumbrancer, but with the sole view of carrying into effect a previous understanding, by which the old mortgage executed by Christopher, the vendor, was to be exchanged for the judgment-bonds of Daniel, the purchaser. After consulting counsel as to the proper mode of proceeding, the parties, in pursuance, it is to be presumed, of the professional advice they had received, proceeded to the county offices, where the business that had brought the Harbaughs to the town was completed by entering satisfaction on the record of the mortgage, and in lieu thereof causing judgments to be entered to secure the payment of Daniel's bonds to George Harbaugh, who, it appears, was substituted for his father, the mortgagee. These preliminaries being arranged, Daniel asked his father for the deed. Some hesitancy being manifested by the father, who, as the witness said, looked at George Harbaugh and all around, the latter said, "Yes, you have to give the deed to Daniel; you have the agreement, the deed belongs to Daniel, and you have the agreement to show against the deed;" whereupon the father gave the deed to the son. It is obvious that, in all this, George Harbaugh was merely giving to the principal actors his opinion of what was proper to be done to consummate a precedent arrangement, not as one having an interest in it, for he had in fact none, but as the friend of the contracting parties. Up to this time, too, according to the witness's first statement, not one word was said indicating that the balance of the purchase-money was to remain a lien on the land. It was not until the attention of the witness was recalled to the subject that he testified Harbaugh said to his father, "you have your right in the land, and you have your articles of agreement t⌒

show against the deed." This is the sole expression upon which the plaintiff is compelled to base his whole case.

But what right did Harbaugh speak of? The deed referred to the article so far as this provided for the privileges reserved, and the annual appropriations of things in kind, to be made out of the land itself, and if Harbaugh was aware of the contents of this deed, it is probable, or at least very possible, he referred to this provision in it. His observation might be rendered, without the slightest violation of the language used, "the deed refers generally to the reserves mentioned at large in the article, as your right in the land, and you have the article to show against the deed." But admitting that Harbaugh might have had reference to the balance of purchase-money, and was so understood, still resting in conjecture as it necessarily does, it is too uncertain to work the important effect claimed for it, and were it less so, in this particular, the answer would be, that, so far as appears, it was the mere expression of opinion upon a legal question by a third person, standing in no peculiar relation of confidence to the parties, not asserted by the grantee, nor clearly shown to have been so properly and exclusively acted upon by the grantor, as to call for the interposition of equity to prevent a fraud. Were it, however, possible to admit the proposed testimony to stand, clear of these objections, it cannot be contended that the estate in the hands of the grantee was liable to be radically affected by the uncalled-for interposition of Harbaugh. So far as appears, the former was silent, nor do I perceive any thing in the circumstances attending this transaction that called upon him expressly to negative the supposed error of an opinion casually expressed, especially when it is recollected that this whole subject had been in the contemplation of the parties for upwards of eighteen months, and that they came prepared finally to execute their agreement. In the Bank v. Fordyce, *supra*, the mere silence of the assignee was held not to be such an assent to a statement made in his presence, as amounted to a contract, and, it seems to me, the same conclusion is inevitable here. This remark acquires additional weight from the reflection that Daniel may have understood the speaker to have had special reference to the reservations mentioned in the deed, and, if so, the remark would have called for no answer. If, then, the estate in the hands of the grantee was not bound, can it be said that a prior encumbrancer—for such in truth was Harbaugh's position—who afterwards became a purchaser to save his debt, is to be affected? Certain it is that since Kauffelt v. Bower, 7 Serg. & Rawle, 64, an encumbrancer posterior to the

conveyance would not be subjected to the operation of such a lien for purchase-money, even with notice. Perhaps, however, in a proper case, fully made out, the liabilities of one standing in the position of Harbaugh might be established on the principle that he who occasions a loss to innocent persons, by the misrepresentation of a fact, is bound to make it good. But it is unnecessary to pursue the inquiry further. The decision of this case may be safely rested upon the loose and inconclusive character of the rejected testimony, as being wholly insufficient to transform the defendant, Harbaugh, into a trustee *ex malificio*, and it is only on this ground the action can be maintained. As tending rather to mislead than to enlighten the jury, it was properly excluded from their consideration; Stub *v.* Stub, 3 Barr, 255.

It was faintly urged on the argument, that, admitting the testimony of Jacob Zentmyer to have been rightly rejected, yet the plaintiff ought to have been permitted to recover for the non-payment of the annuity or rent, payable to the ancestor during life. But there is no soundness in this notion. The right to receive was personal to Christopher Zentmyer and his wife, and any claim for arrearages survives, if at all, in their personal representatives, to be enforced by personal action, and not to the heirs, to furnish ground for an ejectment. Besides, this point does not appear to have been made in the court below.

Judgment affirmed.