## Ruth Bierer's Appeal.

## Everard Bierer's Appeal.

1. It is a sound rule that parties to an ante-nuptial contract, do not, like buyer and seller, deal at arms' length, but stand in a confidential relation requiring the exercise of the greatest good faith. There must be a full disclosure of the circumstances and property of each. If the provision for the wife is manifestly unreasonable and disproportionate to the means of the intended husband, it raises a presumption of designed concealment and there is on him the burden of disproving that presumption.

2. The 35th section of the Act of March 29th 1832, gives a widow twelve months in which to elect whether she will take under the will of her deceased husband or take her dower. It also provides for the issuing of a citation by the Orphans' Court, and that a record be made of her election. Whenever this method is not resorted to, and her election is sought to be shown *in pais*, it must be by clear and satisfactory evidence that the widow acted under a full knowledge of the property and of her rights.

3. Where it is proposed to impeach a release of a widow to the executors of her deceased husband, on the ground of fraud, the evidence thereof should be clear, precise and indubitable.

4. Compromises of doubtful rights, and more especially family compromises, are favored both in equity and law. They imply the surrender of some right. If it afterwards be ascertained that the right relinquished was more certain than had been supposed, it affords no ground for disturbing the compromise. When made in good faith and with full disclosures, family compromises may be sustained in equity on ground less than would be required between strangers.

November 21st 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ.   STERRETT and GREEN, JJ., absent.

Appeals from the Orphans' Court of *Fayette county:* Of October and November Term 1879, Nos. 330 and 363.

Appeals of Everard Bierer and others, executors and devisees of Everhart Bierer, deceased, from the decree of the court dismissing the exceptions of said executors and devisees to the report of the auditor appointed to report upon exceptions to the final and partial account of said executors, and confirming said report.

Also the appeal of Ruth Bierer from the same decree of said court.

The material facts are stated in the opinion of this court.

*A. S. Fuller* and *D. Kaine,* for Ruth Bierer.

*John K. Ewing* and *Edward Campbell,* for Everard Bierer and others. (See Tiernan *v.* Binns et al., *ante,* p. 248.—REP.)

Mr. Justice MERCUR delivered the opinion of the court, January 5th 1880.

These two appeals are from the same decree, and were argued together.

The main contention arises on two written instruments. The one an ante-nuptial contract between Everhart Bierer and Ruth Shaw; the other a release executed by her after the death of her said husband.

It is a sound rule that parties to an ante-nuptial contract do not, like buyer and seller, deal at arms' length, but stand in a confidential relation, requiring the exercise of the greatest good faith. There must be a full disclosure of the circumstances and property of each. If the provision secured for the wife is manifestly unreasonable and disproportionate to the means of the intended husband, it raises a presumption of intended concealment, and throws on him the burden of disproving that presumption. Kline *v.* Kline, 7 P. F. Smith 120 ; Kline's Estate, 14 Id. 122.

It is found by the auditor as a fact, that at the time of the execution of this contract, Everhart Bierer was worth about $60,000, and that Ruth had no property or means of support. He therein agreed that she should be paid the sum of five dollars, thirty days after his death, and that whatever property she had or might acquire in her own right, should remain hers. In consideration of the five dollars she agreed, inter alia, to release all right and claim to all the real and personal estate, including money, of which he might die seised or possessed. This paltry sum of five dollars was manifestly so unreasonable, and disproportionate to the value of his property, as to raise the presumption that he designedly concealed from her the value thereof. That presumption was not rebutted by any specific or satisfactory evidence. It is true, the auditor found that they had lived in the same neighborhood for many years, and the circumstances of each were, to some extent, known to the other. This general information is insufficient to prove she had knowledge, approximating to correctness, of the value of his property. In the absence of any evidence showing he made a statement to her of any sum that he was worth, we cannot presume she would have accepted that nominal sum, had she been fully and truthfully informed. It was not, therefore, such a contract as should move a court of equity to decree its specific performance.

The 35th section of the Act of 29th March 1832, gives a widow twelve months in which to elect whether she will take under the will of her deceased husband or take her dower. It also provides for the issuing of a citation by the Orphans' Court, and that a record be made of her election. Whenever this method is not resorted to, and her election is sought to be shown *in pais*, it must be by clear and satisfactory evidence that the widow acted under a full knowledge of the property and of her rights: Anderson's Appeal, 12 Casey 476. The alleged election by Mrs. Bierer was some two or three weeks after the death of her husband, and she is

not shown to have had that knowledge of his property or of her rights, as the law requires to make her election valid.

The remaining question relates to the release which the widow executed about five or six months after the death of her late husband. It is duly executed under seal. After referring to the several matters in controversy, and stating the desire of all parties interested in the estate to avoid litigation and adjust the differences without expense and delay, she proceeds to declare, after full consideration, and for the purpose of settling and compromising all claims and controversies whatsoever, and having already received three hundred dollars from the estate since the death of her husband and in consideration thereof, and of the further sum of seven hundred dollars then paid, together with all the household furniture in the house where her husband died, she releases and quit claims unto the executors of his will in the most full and ample manner all claims of every kind and nature that she has to any and all of the real and personal estate of which he died seised or possessed. The attempt is to impeach this release for fraud. To succeed in this the evidence of the fraud should be clear, precise and indubitable: Stine v. Sherk, 1 W. & S. 195: Irwin v. Shoemaker, 8 Id. 75: Cummins v. Hurlbutt, *ante*, p. 165.

It appears that David and John, two sons of the testator, who took nothing under the will, and Mrs. Bierer the widow, united together for the common purpose of proving it to be invalid. It was understood between them that no compromise should be made unless all three of them agreed to it. While proceedings towards contesting the will were in progress, offers of compromise were also being made and discussed, and the attorneys of the contesting parties were frequently consulted. The auditor has found that those discussions involved "the effect of the ante-nuptial agreement, the acceptance of the will, the amount of the estate, and her rights as widow." They resulted in offers that were satisfactory to David and John, who desired the widow also to compromise. To this end a Mr. Brown, at the instance of David, called on the widow and advised her to settle. After some persuasion she consented, and in the afternoon of the same day he returned in company with John, bringing the seven hundred dollars. The release was then executed and the money paid. It also appears that Mr. Parshall, who was employed as one of the counsel by all of the contestants, had advised the widow to accept the $700, in addition to the $300, and personal property. That before the execution of the release he had taken it to her and explained its effect. Thus the conferences with the widow were not between her and the executors, but between her and others who were united with her in contesting the will. The executors neither said nor did anything to her to influence her actions or constrain her free

[Bierer's Appeals.]

will. Acting under this release and as it appears without notice of objection from her they paid sundry legacies given by the will.

Much stress was laid on the fact that at one time in the conversation with the widow she expressed an unwillingness to sign the release and take the money until she saw Mr. Fuller, one of her counsel, and that John said there was no use in her seeing him as he was not doing anything for her. This, however, does not appear to have been the operative cause in executing the release. She asked John if he was satisfied that was all they would give without a lawsuit. He answered he was satisfied that was their last proposition and their last effort to settle. He also stated that he and David had agreed to accept the offers of compromise made to them, and the sums they were to receive, and added they would have nothing more to do with her in the matter. It would seem that the unwillingness of John and David to pursue the litigation had weight in inducing her to settle. The good faith of the statement John made in regard to himself and David, and that the executors would give her no more, is not questioned.

It is claimed that the sum received by the widow was inadequate. But inadaquacy of price is not fraud: Graham *v.* Pancoast, 6 Casey 97; Davidson *v.* Little, 10 Harris 245. It is only evidence of fraud, and an executed contract will not be set aside for mere inadaquacy of price.

Compromises of doubtful rights, and more especially family compromises, are favored both in equity and at law. They imply the surrender of some right. If it be afterwards ascertained that the right relinquished was more certain than had been supposed, it affords no ground for disturbing the compromise. When made in good faith and with full disclosure, family compromises may be sustained in equity on ground less than would be required between strangers. Bisp. Eq., sect. 189.

There is some conflict of evidence as to what occurred when the settlement was made. We will not refer to it in detail. The auditor found the evidence of fraud in procuring the release was insufficient to avoid it. We discover no sufficient reason to justify us in reversing that finding. In view of the whole case we think the decree should be affirmed.

> Decree affirmed, and the appeal in each case dismissed at the costs of the respective appellant.

Justice TRUNKEY dissented in the case of Ruth Bierer's Appeal.