[PHILADELPHIA, MARCH 27, 1829.]

## MOSER *against* LIBENGUTH and another, Administrators of LIBENGUTH.

### APPEAL.

A bond in which the obligors declare themselves to be *jointly* held and firmly bound to the obligee, in the sum of, &c., to which payment they bind themselves, their heirs, executors, and administrators, and *every of them*, is a joint, and not a joint and several bond.

APPEAL from the decision of SMITH, J., at the Circuit Court of *Montgomery* county, held the 10th of *April*, 1829.

*Peter Moser* brought this action of debt against *Eve Libenguth* and *John Libenguth*, administrators of *Jacob Libenguth*, deceased, upon a bond in these words, viz.

"Know all men by these presents—That *I, Joseph Libenguth, of the borough of Pottstown, and Jacob Libenguth of Pottsgrove township, all of Montgomery county and state of Pennsylvania, are jointly held and firmly bound unto the said Peter Moser, of the borough of Pottstown in the county of Montgomery and state of Pennsylvania,* in the sum of *four hundred pounds in gold or silver,* lawful money current in *Pennsylvania,* to be paid to the said *Peter Moser,* or to *his* certain attorney, executors, administrators, or assigns; to which payment well and truly to be made and done, *we* bind *ourselves, our* heirs, executors, administrators, and every of them, firmly by these presents. Sealed with *our* seals, dated the *second* day of *April,* in the year of our Lord one thousand eight hundred and *twenty-one.*

"The condition of this obligation is such—That if the above bounden *Joseph Libenguth,* or *Jacob Libenguth, or either of them,* or *their* heirs, executors, administrators, *or any of them,* shall and do well and truly pay or cause to be paid, unto the above named *Peter Moser,* or to *his* certain attorney, executors, administrators, or assigns, the just and full sum of *two hundred pounds, with lawful interest,* in like money as aforesaid, at or upon the *first* day of *April, in the year of our Lord one thousand eight hundred and twenty-two,* without fraud or further delay, then the above obligation to be void and of no effect, otherwise to be and remain in full force and virtue. *Joseph Libenguth.* (Seal.)
*Jacob Libenguth.* (Seal.)

Sealed and delivered in presence of

*William Mintzer,*
*Jacob Missimer.*"

The parts of the bond in italics were written, and the residue printed.

(Moser *v.* Libenguth and another, Administrators of Libenguth.)

The cause was tried on the pleas of payment with leave to give the special matters in evidence; *non est factum,* and the following plea:—

" That the writing obligatory, if any such was sealed and delivered by the said *Jacob Libenguth,* was sealed and delivered jointly with one *Joseph Libenguth,* who is still living, to wit, at *Montgomery* county, and not by the said *Jacob Libenguth* alone."

The plaintiff replied, *Non solvit* and issues, and, " That the plaintiff ought to have his action, &c., any thing in the aforesaid plea notwithstanding; and that the said writing obligatory in the declaration mentioned was sealed and delivered by the said *Jacob Libenguth* jointly and severally with the said *Joseph Libenguth.*"

*William Mintzer,* one of the subscribing witnesses, proved the execution of the bond; and that *Jacob Libenguth* was the surety of *Joseph Libenguth* in the said bond.

*Henry Moser* proved, that the consideration of the said bond, was the purchase money of a certain house and lots of ground in *Pottsgrove,* purchased by the said *Joseph Libenguth* from the said *Peter Moser.*

The jury, under the direction of his Honour, found a verdict for the plaintiff, for six hundred and fifty-nine dollars and thirty-six cents.

The defendants' counsel, on the same day, moved for a new trial, for which the following reason was filed, viz.

The judge charged the jury, that the bond upon which suit is brought, is a joint and several bond, and not a joint bond.

The motion for a new trial was overruled, and the defendants appealed from the decision.

*Rawle,* jun., for the appellants.—The only question is whether the bond is joint, or joint and several. As there are no equitable circumstances in the case, effect must be given to it purely as a legal instrument; and, far as the courts have latterly gone in construing bonds to be joint and several rather than joint, they have never yet pronounced an instrument like this, unattended by any equity, to be several, even where the parties have not declared themselves bound, as they have done in this case, *jointly.* The extent to which they have gone, has been to consider a bond as several where it might fairly be inferred from circumstances, that such was the intention of the parties, or where the deceased obligor has received the money, or been a partner, or derived some benefit from the loan, or some other circumstances existed, which would make it against equity to exonerate his estate. This has been done on the principle of reforming the instrument. In *Besore* v. *Potter,* 12 *Serg. & Rawle,* 154, the instrument was precisely like this, except that there the obligors did not declare themselves to be *jointly* held. Prior to that case, the words, " we bind ourselves, our heirs, executors, and administrators, *and every of them,*" had never been held to make a bond several. An examination of that case will

(Moser *v.* Libenguth and another, Administrators of Libenguth.)

show that it does not entrench so much as it might be imagined, upon what was considered the law.   It was decided upon the equitable circumstances of the case; Judge DUNCAN, who delivered the opinion of the court, considering it to be a case in which equity would reform the instrument, and declaring his opinion to be in accordance with that of Chief Justice MARSHALL, in *Hunt* v. *Rousmanier*, 8 *Wheat.* 174; and though he laid hold of the words, *and every of them,* as showing intention, he admitted that some latitude must be taken to give them that effect.   It cannot, therefore, be doubted, that if he had been sitting as a law judge merely, he would have construed the bond to be joint, as it certainly would be held in *England.*   If this view of the subject be correct, the bond in question is a joint bond independently of the word *"jointly,"* prefixed to the declaration of indebtedness.   The defendants' intestate had received no benefit whatever; there was nothing in the case to create an equity against him, and he was therefore entitled to that favour, which is always extended to sureties by courts of equity.   He is bound to the extent of his bond, but no further. It is no argument to say that the obligors intended to bind themselves severally, and did not know the difference between a joint and a joint and several bond.   It is enough to say, that they are supposed to know the law.   But there are substantial reasons why a man should consent to bind himself jointly with another, and thus limit his responsibility to his own life, and yet refuse to enter into an obligation the terms of which would subject his representatives to law suits. *Weaver* v. *Shryoch*, 6 *Serg. & Rawle*, 262.

If, then, the intention of the parties were not positively declared by the use of the word *"jointly,"* the implication from the words *"every of them,"* would not be strong enough to make this a joint bond, viewing it merely as a legal instrument independently of equity.   But, whatever may be the force of implication, it is never permitted to push aside the express declaration of the parties; and, as they have said in this instance that they are *jointly* bound, the court are not to imply, from doubtful words, that they intended to be bound *severally.*   A bond clearly several in its terms, has been held joint by the introduction of the word *conjunctim.* 5 *Bac. Ab.* 163, 164.   By considering the bond as joint, effect is given to all its parts, while, to treat it as several, the word *jointly* must be stricken out.   The term *jointly* refers to the responsibility which the obligors assume; while the words, *"every of them,"* may fairly be construed to mean all the executors of the surviving obligor. If the word *"jointly"* had been introduced inadvertently, there might be some weight in the suggestion that the parties attached no force to it, and were not aware of its effects; but it is to be observed that it is found in the written part of the bond, while the words which are relied upon as words of severalty are in the usual printed form.   If, therefore, actual intent is to govern, the case is with the defendants, so far as intent can be gathered from language.

(Moser *v.* Libenguth and another, Administrators of Libenguth.)

*Kittera,* for the appellee.—To pronounce the instrument on which this suit is brought joint, it will be necessary to overturn no less than four decisions, upon words of precisely the same import. *Geddis* v. *Hawk,* 10 *Serg. & Rawle,* 33. *Besore* v. *Potter,* 12 *Serg. & Rawle,* 154. *Moneugh* v. *Butler's Administrators,* cited in 12 *Serg. & Rawle,* 158. *Detterer* v. *Custer, M. S. Case.* The only difference between these cases and that under consideration is, that here the binding is joint in express words; but this is nothing more than the law imports from the words, " we bind ourselves," which make a joint obligation as completely as any form of words that could be devised, and yet they have been held to be controlled by the subsequent introduction of the words, "*and every of them,*" by which a joint bond is converted into a joint and several one. The intention of the parties to make this a joint obligation, it is impossible to doubt. It is almost always the intention; for no unlettered man ever dreams of the distinction between such instruments. It was prepared by a man who was not a lawyer, and who filled up a printed form, inadvertently omitting to introduce the words " and severally," after the word " jointly."

Judgment reversed, and a new trial awarded.

———————

[PHILADELPHIA, MARCH 27, 1829.]

STODDART, for the use of his Assignees, *against* ALLEN and another, Assignees of MOORE, MYERS, and Co.

If an assignment be made for the benefit of such creditors as shall execute a release within a given time, one to whom a debt is actually due, and who releases within the time, but afterwards takes up notes drawn and endorsed by him for the accommodation of the assignor, is not entitled to a dividend of his estate upon the notes thus taken up.

CASE for the opinion of the court, as follows:—

" *John Stoddart,* and *Moore, Myers,* and Co., were merchants, and had considerable dealings together, in the course of which, they lent and endorsed notes for each other, to a large amount.

" On the 21st *February,* 1820, *John Stoddart* made a general assignment to *Thomas Fletcher,* for the benefit of his creditors; and on the 25th of the same month, he executed another assignment of the same nature to the same person and *Jacob Butz,* (prout assignment,) without stipulating for a release.

" On the 7th of *March,* 1820, *Moore, Myers,* and Co. executed an assignment of the same nature, to *William Allen* and *Richard Rowley,* in which assignment is a provision in favour of certain preferred creditors, and also in *favour of general creditors who shall within a certain limited time, execute a release to the said Moore, Myers,* and Co., (prout assignment.)