[PHILADELPHIA, MARCH 27, 1830.]

## MOSER *against* LIBENGUTH and another, Administrators of LIBENGUTH.

### APPEAL.

A joint bond cannot, as against a surety, be shown to have been made so by mistake, instead of a joint and several bond, by evidence *dehors*, unless the evidence leave no doubt, that a mistake, in point of *fact*, has been committed, and the instructions of the parties departed from.

APPEAL by the defendants from the decision of SMITH, Justice, holding a Circuit Court for *Montgomery* county, on the 1st of *March*, 1830.

The action was debt, brought by *Peter Moser* against *Eve Libenguth* and *John Libenguth*, administrators of *Jacob Libenguth*, deceased, on a bond, dated 2d of *April*, 1821, given to *Peter Moser* by *Joseph Libenguth*, and the said *Jacob Libenguth*, the intestate. This bond was decided to be a *joint* bond, for which decision, and the form of the bond, see 1 *Rawle*, 255. The cause was tried again on the pleas of payment, with leave to give the special matters in evidence, *non est factum*, and the following plea, viz. "That the writing obligatory, if any such was sealed and delivered, by the said *Jacob Libenguth*, was sealed and delivered jointly, with one *Joseph Libenguth*, who is still living, to wit: at the county of *Montgomery*, and not by the said *Jacob Libenguth*, alone."

The plaintiff replied, *non solvit* and issues, and "That the plaintiff ought to have his action, &c. any thing in the aforesaid plea notwithstanding; and that the said writing obligatory, in the decla-

(Moser *v.* Libenguth and another, Administrators of Libenguth.)

ration mentioned, was sealed and delivered by the said *Jacob Libenguth,* jointly and severally with the said *Joseph Libenguth.*"

*William Mintzer,* one of the subscribing witnesses, after having proved the execution of the bond, testified, "That he filled up the bond at the request of *Moser* and the *Libenguths:* That in doing so, he acted as the agent of both parties: That *Joseph* got the money from *Moser,* and *Jacob,* the father, went security: That the parties did not give him any instructions whatever, in what manner *Jacob Libenguth* was to be bound: That he received no instructions from either of the *Libenguths,* except that *Jacob* was to go security for the money, and he was told to fill up the bond in the usual form: That he had filled up a number of bonds for *Moser,* in some of which, there were sureties: That he received no instructions to make this a joint bond from either of the parties: That he received no instructions to make it a joint and several bond; none from either party, one way or the other: That he read it to the parties, but doubted whether they understood it; they were all *Germans:* That he explained the amount of the bond to them, and the suretyship, and when it was to be paid, and that both were bound: That from the instructions he received from both parties at the time, he intended to bind them jointly and severally; that is, if *Joseph Libenguth* was not able to pay the money, *Jacob* should: That *Joseph* was considered insolvent a number of years back; in 1825 or 1826, his property was sold by the sheriff: That he did not read the bond to them in *German,* but explained it, and he had no doubt they knew what they were about when they signed the bond: That the instructions were to draw up the bond in the usual way in which he had done so for Mr. *Moser:* That in drawing bonds, he generally put in the words jointly and severally, and he could not account for not having put in the word severally in this instance, except that the line was filled up: That it was in the presence and hearing of old Mr. *Libenguth,* that he was told to fill up the bond in the usual way: That this instruction referred to its being paid in gold or silver; but whether it referred to that alone, he could not say."

The evidence being closed, His Honour charged the jury: "That they were to consider whether any circumstances had been given in evidence, to show, that the original intention of the parties was, that the bond should be joint and several: That they must be satisfied from the evidence, that such was the intention: That if they were satisfied, that it was the intention of the parties that it should be different from what it was, the plaintiff must recover: That it was for the jury to say, whether *Jacob Libenguth* intended it should be a joint bond; if he did intend it, he must have known that his estate would not be bound after his death, which was more than many lawyers knew: That if, from the circumstances, they believed it was a mistake of the scrivener, and the parties intended the bond should be joint and several, and not joint, it was their

(Moser *v.* Libenguth and another, Administrators of Libenguth.)

duty to find for the plaintiff; and if the evidence struck them as it struck him, old Mr. *Libenguth* did not believe or think his estate would be exonerated from the payment of this bond after his death. If, however, the jury thought differently, they would find for the defendants."

The jury found a verdict for the plaintiff, upon which the defendants moved for a new trial; and the judge having overruled the motion, they appealed.

The cause was argued by *Rawle,* Jr. for the appellants, who cited, 1 *Phill. Ev.* 511. *Gillespie* v. *Moon,* 2 *Johns. Ch. Rep.* 596, 597. *Lyman* v. *The United Insurance Company,* 2 *Johns. Ch. Rep.* 633. *Christ* v. *Diffenbach,* 1 *Serg. & Rawle,* 465. *Cozens* v. *Stevenson,* 5 *Serg. & Rawle,* 423, 426. *Iddings* v. *Iddings,* 7 *Serg. & Rawle,* 114. *Heagy* v. *Umberger,* 10 *Serg. & Rawle,* 342. *Besore* v. *Potter,* 12 *Serg. & Rawle,* 160. 1 *Madd. Ch.* 60. *Lyon* v. *Richmond,* 2 *Johns. Ch. Rep.* 51. *Heilner* v. *Imbrie,* 6 *Serg. & Rawle,* 411. *M'Williams* v. *Martin,* 12 *Serg. & Rawle,* 269. *Weidler* v. *Farmers' Bank,* 11 *Serg. & Rawle,* 134. *Deal* v. *M'Cormick,* 3 *Serg. & Rawle,* 344. *Weaver* v. *Shryock,* 6 *Serg. & Rawle,* 264. *Fisher* v. *Larick,* 3 *Serg. & Rawle,* 319.

*Kittera,* for the appellee, referred to, and commented on the authorities cited against him, and cited, *Marshall* v. *De Groot,* 1 *Caines's Cases in Err.* 122.

The opinion of the court was delivered by

GIBSON, C. J.—In 1 *Rawle,* 255, this bond was determined to be joint, because the positive intent of the parties, as expressly declared in the penal clause, could not be controlled by an adverse implication, which might otherwise have been made from the words of the condition. The attempt now, is to establish the existence of accident and mistake, by evidence *dehors;* but although an instrument may undoubtedly be reformed on parol proof, yet, where, as here, the relief sought is adverse to the pre-existent equity of a surety, the evidence should be so clear as to leave the fact without the shadow of a doubt. Where, indeed, the deceased obligor was the principal debtor, mistake will, it seems, be presumed from the naked relation of the parties; but, whether of FACT, as regards the words inserted, or of LAW, as regards their effect, is nowhere said; relief being granted to prevent a failure of justice, and substantially, on the foot of an equity arising from actual receipt of a benefit. It has, indeed, been intimated by authority eminently entitled to general respect, that mistake in point of law, is an available ground to reform the instrument, independently of fraud and imposition, or the relation of the parties. *Hunt* v. *Rousmanier,* 8 *Wheat.* 174. That point is not before us, and at present, it is proper to say no more than that the principle seems to be unsupported by authority or analogy; and that it would be pregnant with danger further to

(Moser *v.* Libenguth and another, Administrators of Libenguth.)

expose instruments of writing to speculation as to the legal under-standing of the parties, and to the hazard and uncertainty of parol proof.   In the case at bar, the plaintiff was bound to show a clear mistake in matter of fact; and how stands the evidence of it? The scrivener testified, explicitly, that he received no instructions to make the bond joint and several, being barely desired to fill it up in the usual way; but that he, himself, intended to bind the ob-ligors jointly and severally; that is, as he explains it, to bind the surety to pay, in case the principal should not: in other words, that he and the parties were ignorant of any difference between the one form and the other, and if that were a ground of relief it would sel-dom be wanting.   But a mistake of the scrivener, if not common to the parties, would be unimportant, the question being, was any thing omitted which was directed to be inserted?   The scrivener read the bond to the parties, but doubts whether it was understood.   A doubt would be insufficient to rebut the equity of a surety, even if it re-lated to matter of fact, particularly where the person doubting ex-plained the matter to the parties in their vernacular tongue, and says, he entertains *no doubt* that they knew what they were about. But the doubt, if any, evidently related to the legal effect of the in-strument—a circumstance altogether insufficient to sustain a prayer for relief against a surety: but nevertheless, this was obviously the ground on which the jury found for the plaintiff, as the evidence excludes the possibility of mistake in matter of fact.   The parties gave no particular instructions, without which it is not easy to see how mistake can be suspected.   Having heard the bond read in the *English* language, in connexion with the scrivener's explanations in the *German*, they adopted its words as their own, and took upon themselves the consequences of their legal effect.   The administra-tors of the surety, therefore, being discharged at law, cannot be charged in equity.

Huston, J. and Tod, J. were absent in consequence of sickness. Judgment of the Circuit Court reversed, and a new trial awarded.