IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1890.

## CHAS. BRENEISER, JR., v. CHAS. H. DAVIS.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF BERKS COUNTY.

Argued March 6, 1890—Decided March 31, 1890.
[To be reported.]

(*a*) A deed for a house and lot described the property conveyed as " con-
taining, in front, including alley, 19 feet 5 inches, and in depth 120 feet;
subject to the joint use of the alley on the north by the owner of the
premises adjoining on the north: "

1. The meaning of this description is, that the lot conveyed has a uniform
width of 19 feet 5 inches, throughout its entire length; and, in the ab-
sence of anything else restrictive, the vendee would be entitled to hold
to that width, the reference to the alley not importing any change in
width at its terminus.

2. Nor will the existence of a fence extending from the rear of the house
to the rear of the lot, on such a location as to reduce the width of the
enclosure beyond the terminus of the alley to 17 feet, control the opera-
tion of such deed, when it is not mentioned therein and the grantor has
power to convey to any line he may choose.

(*b*) A vendor offered two adjoining lots at public sale. In the advertise-
ments, and in written conditions of sale, both the lots were so described
as to embrace a certain strip of ground. There was no division line
between them established by the city plan, but the vendor had made a
draft adopting a certain fence as the line of division.

Statement of Facts.

(c) By the draft, the strip mentioned was included in one of the lots known as No. 138. That lot was not sold at the public sale, but the other, known as No. 140, was then sold. The purchaser of No. 140 knew nothing of the draft, nor that the advertised description of No. 138 included the strip, nor that the fence on the ground was called for therein.

(d) At the time of the public sale, and when he subsequently received his deed, the purchaser understood he was buying said strip. After the public sale, the vendor sold No. 138 privately, in accordance with its advertised description, the purchaser receiving his deed after that for No. 140 was on record:

3. In such case, the purchaser of No. 140 was not bound by the draft; nor was he bound to read the description of No. 138 as advertised; but the purchaser of No. 138, to entitle him to hold the strip against the prior conveyance of No. 140, must establish a mutual mistake in the deed for the latter by such proof as would authorize its reformation.

Before PAXSON, C. J., CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 313 January Term 1890, Sup. Ct.; court below, No. 3 October Term 1888, C. P.

On September 6, 1888, Charles Breneiser, Jr., brought eject-ment against Charles H. Davis, for a strip of land 2 feet 6¾ inches in width and 88 feet in length. The defendant's plea was not guilty.

At the trial on May 16, 1889, the following facts were shown: Andrew Davis died in 1875, seised of two adjoining houses in the city of Reading, Nos. 138 and 140, South Eighth street, certain ground lying in their rear and enclosed therewith, and of other properties. By his will, duly admitted to probate, he devised one of the properties mentioned to his wife, providing, however, that at her death or re-marriage it should revert to his estate. His will provided also that on the death or re-marriage of his wife his executor, George D. Stitzel, should sell and con-vey all his estate, real and personal, the proceeds to be equally divided among his children.

On January 24, 1885, the widow having re-married, the execu-tor offered the various pieces of real property belonging to the es-tate of the testator at public sale. The sale was advertised in the newspapers, and the premises Nos. 138 and 140 were therein described substantially in the same manner as in the deeds afterwards executed and mentioned below. Prior to the sale,

the executor had a plot made exhibiting the subdivisions in accordance with which he proposed to sell.

The house No. 140 extended along Eighth street 19 feet 5 inches. At its northern end, an alley way, about 2 feet 5 inches in width, leading from the street to the rear, passed underneath the second story. This alley was used in common by the occupants of both the testator's houses. A division fence between the yards in the rear of these houses started at the end of the alley and ran back upon a line with the southern edge of it, so that a person, in passing from the street through the alley, if he kept straight on, would walk into the yard connected with No. 138; and one, wishing to go into the yard of No. 140, would have to turn at a right angle, to the left, and pass through a gate in the fence. This fence had been maintained upon that location for some years prior to the testator's death, the width of the lot enclosed with house No. 140, at its rear, being only 17 feet.

The draft made by the executor adopted the line of the fence as the division line in accordance with which his sales should be made, representing the lot to be sold with house No. 140 as 19 feet 5 inches in width, back as far as the end of the alley, and as 17 feet in width, for the remainder of its depth; and representing the space which a prolongation of the alley would have occupied as a part of the ground to be sold with house No. 138.

The plot was presented at the sale, held in the Keystone hotel; and the testimony for the defendant tended to prove that, after the auctioneer had read the conditions of sale, embracing descriptions of the properties to be sold, which were to the same effect as those contained in the advertisements, the executor's attorney announced to the persons present that all bidders desiring to examine the draft might come forward and do so, whereupon he laid it down upon the counter where it was accessible to any one who might wish to see it. Charles Breneiser, Sr., who was the father of the plaintiff and attended as a bidder on the plaintiff's behalf, testified that he heard no such announcement and saw no draft, though the announcement might have been made before he came in, as he was a little late getting to the sale; that the only knowledge he had of the dimensions of the lot No. 140 was derived from the adver-

Statement of Facts.

tisement describing it as having a front of 19 feet 5 inches and a depth of 120 feet; that he had examined the property before the sale and had seen the fence, but made no measurements and took it for granted the fence was on the line; and that he paid no attention to the description of the other lot in the advertisements and conditions of sale, as he did not intend to bid on it and was not interested in it. There was evidence that the plaintiff also had inspected the property before the sale.

At the sale on January 24, 1885, the premises No. 140 were struck off to Charles Breneiser, Sr., for his son, the plaintiff, who the same day signed a contract of purchase appended to the conditions of sale and making reference thereto. In them this property was described as being 19 feet 5 inches by 120 feet. On March 27, 1885, the plaintiff received a deed from the executor which was duly recorded on April 1, 1885. The description therein was as follows:

" All that certain two-story brick dwelling house, with brick back buildings, and a lot or piece of ground, situate on the west side of South Eighth street, between Chestnut and Franklin streets, in the city of Reading, aforesaid, No 140 South Eighth street; bounded on the north by other property of said Andrew Davis, deceased; on the west by other property of said deceased about to be conveyed to Charles H. Davis; on the south by property of Mary R. Marhett, and on the east by said South Eighth street; containing, in front, including alley, nineteen feet five inches, and in depth one hundred and twenty feet: subject to the joint use of the alley on the north by the owner of the premises adjoining on the north."

The property, No. 138 South Eighth street, was offered at the sale on January 24, 1885, and was bid for but was not sold that day. On February 2, 1885, the executor sold it at private sale to Charles H. Davis, the defendant, the contract describing it as having a frontage of 22 feet and ½ inch, but a width of 24 feet 7½ inches beyond the terminus of the alley. The deed in execution of this contract was made on January 26, 1887.

At the close of the testimony, the court, ERMENTROUT, P. J. delivered a charge to the jury, which, after reciting the circumstances surrounding the sale to the plaintiff and the

conveyance made to him in pursuance thereof, proceeded as follows:

Now, that was the property conveyed to Mr. Charles Breneiser; and the difficulty arises from the fact that the one boundary line, between the Breneiser property and the property claimed by the defendant, was not fully described in this deed. The mere presenting of this deed and proof of its execution, if there was nothing else in this case, would entitle the plaintiff to a verdict, if any part of the property embraced in the 19 feet 5 inches by 120 feet had been taken possession of by the defendant. For, ordinarily, in the absence of any marks upon the ground, or monuments or other proper legal evidence showing the facts to be otherwise, when a man buys a piece of ground 19 feet 5 inches in front by 120 feet in depth, the presumption would be that he bought, straight through, the 19 feet 5 inches; so that if this deed were the only evidence in the cause, the plaintiff would be entitled to a verdict.

But there is other evidence in the cause to show the exact boundaries of this property, and to show what was really conveyed by this deed of George D. Stitzel, executor, to the plaintiff. In other words, when courses and distances given in a deed differ from the natural and artificial boundaries on the ground, the boundaries on the ground govern. If there are no monuments, no marks upon the ground, to indicate the lines, and there is a discrepancy between the courses and distances given, and the adjoining land is called for, the adjoining lands would prevail; and, in ascertaining the location of the tract of land, the inquiry is not where it should be or might be located, but where it actually was located.

Evidence is produced here to show to the jury the monuments and marks upon this ground, and these monuments and marks upon the ground will control and fix the boundaries, regardless of what the measurements may be in a deed. This property is described as an entire property, as being No. 140 South Eighth street. In the advertisement, the adjoining property of the defendant is described as No. 138, and to determine the boundaries of these properties it is necessary for the jury to examine into the boundary marks upon the land, and where there are such, those boundary marks would control the courses and distances and measurements. . . . .

[Now, it is contended on the part of the defendant that the boundaries here are marked by this fence; and, if from this evidence the jury should find that there are fences upon this property enclosing the tract, those fences would govern. There does not seem to be any dispute about that fact, so far as the court can learn in this case. There are fences there, and they mark out a plot of ground just as the defendant contends was conveyed in this deed to the plaintiff. If that is so, the plaintiff has no case.] [1]

A great deal has been said in this case about a draft. We say to the jury that, if they would believe the testimony that at this sale the advertisements were read and a notice given of a draft showing these properties so as to give notice to buyers, any one seeing that draft would be bound as to the location and boundary line of those properties by the descriptions in the draft, and he could not complain if he got anything and everything that was contained in the draft in the particular plot which he bought.

[But, even if the draft was thrown out of the case, we say to you that the plaintiff would be bound by the notices contained in the advertisements which were read at this public sale, and the notices contained in the conditions which he signed, which refer to this advertised list. An inspection of this advertised list will show that these properties were put up and sold as specific properties: No. 1, as an entire property, and 2, as an entire property; and the description in No. 1, now owned by Davis, sets forth the description in full and in detail of the very strip of land which the plaintiff alleges should be in his possession. So that, from that advertisement, the plaintiff would have notice of the manner in which these properties were sold, and that this strip formed part of No. 1 and not of No. 2, which he bought. That being so, the verdict should be, for the defendant.] [2]

The plaintiff asks us to say to the jury:

1. That if the jury find that the plaintiff, or his father, Charles Breneiser, Sr., who bid off the property at public sale, did not have actual notice when he purchased, or when the deed was delivered and the consideration money paid, that the property was not of uniform width 120 feet west from Eighth street, then the verdict must be for the plaintiff.

Answer: This point we cannot affirm.

2. If the jury find that notice of a draft was given only when the sale began, and no notice was given of the draft when the plaintiff's property was put up for sale and the printed advertisement and description of it read by the auctioneer; and the jury further find that plaintiff had no notice that the property was not of uniform width, from the building line of Eighth street westward 120 feet, at the delivery of the deed, the verdict must be for the plaintiff.

Answer: This point is refused.

3. That the plaintiff's deed being recorded more than a year prior to the execution of the defendant's deed, the recording thereof was notice to the defendant of the conveyance of the property in question to the plaintiff.

Answer: If by this point is meant the disputed strip of ground, we cannot affirm it. The jury will recollect that the plaintiff's deed was prior to the execution of the defendant's deed; but that does not necessarily give the plaintiff title to that strip of ground.[3]

The whole case turns upon this matter of description rather than anything else. [Here are the marks upon the ground showing the plot sold to the plaintiff. He took possession of the plot, and those marks being upon the ground were notice to him of the extent of the boundaries of the land, and under the evidence in this case the jury will probably have no difficulty in finding a verdict for the defendant. It will be unnecessary for you to leave the box. The court have already laid down to you the principles of law, and there is very little dispute in the testimony; in fact, none upon the main points. In the judgment of the court, your verdict should be for the defendant.][4]

The jury returned a verdict for the defendant. A rule for a new trial having been discharged, judgment was entered on the verdict, when the plaintiff took this appeal, assigning for error:

1, 2. The portions of the charge embraced in [ ] [1] [2]

3. The answer to the plaintiff's point.[3]

4. The portion of the charge embraced in [ ] [4]

Arguments.

*Mr. Isaac Hiester* (with him *Mr. Daniel Ermentrout* and *Mr. C. H. Ruhl*), for the appellant:

1. A fence erected across the grantor's land, but not indicated or mentioned in the deed, is not such a monument as will control the description given in a deed: Stuven v. Kalchreuter, 8 W. N. 44; Thompson v. Kauffelt, 110 Pa. 209. It is true that lines marked on the ground, though not named in the deed, will control the description in the deed, if they were fixed or recognized by the grantor and grantee, at the time of the conveyance, as the true boundary. But the question whether this fence was so agreed upon as the boundary line, was one for the jury; and if the minds of the parties did not meet in adopting it, the description in the deed must stand. Instead, however, of submitting to the jury the disputed question, whether there was a mutual mistake in the description of what the vendor and vendee intended to buy and sell, the court took the case entirely from the jury.

2. It seems too plain for argument that a bidder at a public sale is not bound to read the advertisements of other properties offered at the same sale, in which he is not interested; and therefore, that the plaintiff was not chargeable, as the court below held him to be, with knowledge that the strip of ground in dispute, which was included in the description of the property he bought, was also advertised to be sold as a part of another property. But, in so far as the case may depend upon the advertisements, we submit that one of them was as good as the other; that the advertisement of the property bought by the plaintiff included the disputed strip just as plainly as the advertisement of the other property did, and that the plaintiff, having first bought and first recorded his deed, is prior in right to the defendant.

*Mr. H. W. Bland* (with him *Mr. S. M. Meredith* and *Mr. J. H. Jacobs*), for the appellee:

The description of the lot conveyed by the plaintiff's deed, as containing in front, "including the alley," 19 feet 5 inches, impliedly recognizes the fact that, at the rear, the width of the lot was smaller by as much as the space which the alley occupied at the front. The defendant's deed, on the other hand, expressly and unequivocally includes the disputed strip.

Opinion of the Court.

Moreover, the fence, which was the only mark on the ground separating the two properties, corresponds with the lines and width stated in the defendant's deed. That fence controlled the operation of the plaintiff's deed, notwithstanding that it was not named therein: Hall v. Tanner, 4 Pa. 247; Blasdell v. Bissell, 6 Pa. 258; Burkholder v. Markley, 98 Pa. 37; Brolaskey v. McClain, 61 Pa. 163; Willis v. Swartz, 28 Pa. 413; Ogden v. Porterfield, 34 Pa. 191; Ake v. Mason, 101 Pa. 21; Rodgers v. Olshoffsky, 110 Pa. 147. By the advertisements the plaintiff was put upon inquiry, and is chargeable with knowledge of what it would have elicited: Hottenstein v. Lerch, 104 Pa. 454; Eichelberger v. Gitt, 104 Pa. 64; Ogden v. Porterfield, 34 Pa. 191. It is clear that he knew when he bought that the strip in question was not included in his purchase. The intent of the grantor is the cardinal rule of construction of deeds: Criswell v. Grumbling, 107 Pa. 408. To ascertain this, the previous writings were admissible: Koch v. Dunkel, 90 Pa. 264.

OPINION, MR. JUSTICE CLARK:

This case was given to the jury with peremptory instructions to find for the defendant, and this is the principal error complained of. The deed to Charles Breneiser, Jr., dated March 27, 1885, and recorded on the 1st April thereafter, described the property conveyed as follows:

" All that certain two-story brick dwelling-house, with brick back buildings, and a lot or piece of ground, situate on the west side of South Eighth street, between Chestnut and Franklin streets, in the city of Reading, aforesaid, No. 140 South Eighth street; bounded on the north by other property of said Andrew Davis, deceased; on the west by other property of said deceased about to be conveyed to Charles H. Davis; on the south by property of Mary R. Marhett, and on the east by said South Eighth street; containing, in front, including alley, 19 feet 5 inches, and in depth 120 feet; subject to the joint use of the alley on the north by the owner of the premises adjoining on the north."

This description, it must be conceded, without more, was sufficient to vest title to the premises in dispute in the plaintiff, and the learned judge so instructed the jury. The lots

No. 138 and 140, it was admitted, were "the same premises," and George D. Stitzel, the executor of the last will and testament of Andrew Davis, deceased, had power and authority under the will to sell the whole, in his discretion, for the best price he could obtain. The premises do not appear to have been divided and numbered according to any city plot or plan, but by a private draft, made by the executor or under his directions, and it was competent for him to make such division as in the exercise of a reasonable discretion might seem best for the interests of the estate. The executor, therefore, having advertised, sold, and conveyed, according to a certain description, a lot of ground 19 feet 5 inches in front, including the alley, and 120 feet back, the purchaser would, in the absence of anything to restrict his right, be entitled to hold to that boundary. Nor would the existence of a wooden fence within these lines, defining the mode of the present enjoyment of the property, limit his right to the line upon which it stood; for it was in the executor's power to convey to any line he might establish, regardless of the fence. If the advertisement, or the contract of sale, or the deed, had called for the fence as the boundary, a different case would be presented. In that case, the distances in the deed would have yielded to the call for the fence, as a monument on the ground defining the actual boundary of the land embraced therein. But neither the advertisement nor the conveyance made any mention of the fence as a boundary; the lot was described as adjoining the Marhett lot, and as "containing, in front, including the alley, 19 feet 5 inches, and in depth 120 feet."

So, also, if the conveyance had been expressly according to a survey, or for a lot or tract of land by name, the identity and location of which had been fixed by a survey on the ground, then, in either case, would the courses and distances yield to the calls of the survey, and to the actual lines as they were found on the ground. But in this case the estate of Andrew Davis, deceased, owned the entire premises, and it was competent for the executor to convey according to any line he chose. The Marhett lot formed one boundary, and Breneiser had a right to expect that the boundary opposite would be according to the distances in the deed.

But it is said that Stitzel did have a survey of these lots, and a draft which was present at the sale. The sale was at the

Opinion of the Court.

Keystone Hotel, and Mr. Stitzel and Mr. Stevens both testify that the draft was lying by the side of the desk, on the counter, in the hotel, when the sale was made; that the attention of bidders was called to the fact, and that the property would be sold according to the draft. This draft was offered in evidence, and it would appear to have excluded the strip of ground in dispute from the Breneiser lot, and to embrace it in the Davis lot. Charles Breneiser, Jr., was not at the sale. He was represented there by his father, Charles Breneiser, Sr., who says that he had no notice whatever of this draft; that no announcement was made in his hearing; that he bid and bought according to, and relying upon, the description contained in the advertisement; that he did not know whether the fence was on or off the line, but believed that the lot was of the size advertised.

It is said, however, that the disputed ground was embraced in the description of the lot No. 138, and, although that lot was not then sold, yet Breneiser, as a bidder upon No. 140, was affected with notice of the description of No. 138, and his purchase of No. 140 was according to the line of No. 138. Breneiser was not a bidder upon No. 138; he had no concern in that sale, and was not affected with notice of the lines of that lot. But, if this were so, why should Davis not, in like manner, be affected with notice of the description of No. 140, especially as that lot was first sold, and the contract executed several days before Davis's purchase was made?

The defence is founded upon an alleged mistake; a mutual mistake of the parties to the Breneiser deed. Charles H. Davis, having bought with notice of Breneiser's previous purchase, stands in Stitzel's shoes, and, in order to sustain his case, must establish his claim by such proof as would justify a chancellor in reforming the deed. Equity will, in case of fraud or mistake, reform a written contract so as to make it conform to the intention of the parties: Snyder v. May, 19 Pa. 235; but the party alleging the mistake must establish it by clear, precise, and indubitable proofs: Stine v. Sherk, 1 W. & S. 195; Schettiger v. Hopple, 3 Gr. 54; Rowand v. Finney, 96 Pa. 192; Stewart's App., 98 Pa. 377; Logue's App., 104 Pa. 136; Sylvius v. Kosek, 117 Pa. 67.

The judgment is reversed, and a venire facias de novo awarded.