## CHAS. BRENEISER, JR., v. CHAS. H. DAVIS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 4, 1891—Decided March 23, 1891.

1. Where the sole defence in ejectment is that the prior conveyance to the plaintiff, from the common grantor of both parties, erroneously included the land in dispute by the mutual mistake of the parties to it, the mistake must be established by proofs which would justify a chancellor in reforming the deed.

2. Such proofs must be clear, precise, and indubitable; and evidence of the undisclosed intentions and opinions of the parties to the plaintiff's deed, being insufficient to show any mistake of a mutual nature, is therefore inadmissible, and in the absence of other evidence, it is not error to direct a verdict for the plaintiff.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 326 January Term 1891, Sup. Ct.; court below, No. 3 October Term 1888, C. P.

On September 6, 1888, Charles Breneiser, Jr., brought ejectment against Charles H. Davis. Issue.

## Statement of Facts.

At a trial on May 16, 1889, the jury returned a verdict for the defendant. On appeal to the Supreme Court, the judgment entered on the verdict was reversed, on March 31, 1890, and a venire de novo awarded: Breneiser v. Davis, 134 Pa. 1.

At the second trial, on January 13, 1891, both parties claiming under the same source of title, the will of Andrew Davis, deceased, and letters thereon to George D. Stitzel, executor, the plaintiff rested, after putting the will in evidence, with deed from George D. Stitzel, executor thereof, to the plaintiff, dated March 27, 1885, and showing possession of the strip of land in dispute, by the defendant.

In his case in chief, the defendant called George D. Stitzel, executor of Andrew Davis, deceased :

Q. What did you mean to sell as property 140 ?

Mr. Hiester : The plaintiff objects.

By the court: The objection is sustained. It would be incompetent to show what he intended to do ; he can only state facts ; the jury must draw the inference from the facts ; exception.[1]

Q. What was included in property 140 as you offered it for sale ?

Mr. Hiester: The plaintiff objects; the advertisement will show what was included.

By the court: We will sustain that objection ; exception.[2]

Q. You sold according to the draft ?

Mr. Hiester : The plaintiff objects, if it is intended to elicit from the witness an expression of his intention and not the contract of the parties.

Q. State whether or not you sold according to that draft that is there ?

Mr. Hiester: The plaintiff objects for the same reason.

By the court: The objection is sustained ; exception.[3]

Q. What was the draft there for at the sale ?

Mr. Hiester : The plaintiff objects, that it is calling upon the witness to express his unexpressed idea. The plaintiff does not object to anything that was said concerning the draft at the sale.

By the court: We have already ruled that the unexpressed intention of the parties cannot be given. Anything that was said or done at that sale may be shown ; exception.[4]

Statement of Facts.

Q. For what purpose was the draft there?

Objected to.

Mr. Bland: To be followed with evidence that the plaintiff knew personally, and by his father, his agent, read the advertisement in the paper notifying them that the draft would be in the hands of the attorney, Mr. Stevens, and at the sale for the inspection of bidders.

By the court: The objection is sustained; exception.[5]

Charles Breneiser, Sr., called for defendant:

Q. When you bid at that sale, did you expect to get anything that was not enclosed within the fence?

Mr. Hiester: The plaintiff objects, that his rights to the property conveyed to him by the deed are not to be limited by any expectations of the witness.

By the court: Objection sustained; exception.[6]

Q. When you left the property 140, and when you went to the sale at the Keystone House, you thought you were buying what was enclosed within the fence, did you not?

Mr. Hiester: The plaintiff objects, that the inquiry is immaterial; the rights of the plaintiff in his deed cannot be modified by what the witness thought he was buying.

By the court: This question has already been sufficiently gone into, and we will permit no further inquiry. Objection sustained; exception.[7]

Q. And you say you thought the fence was on the line?
A. Yes. Q. And went to the sale with that impression?

Objected to.

By the court: The counsel have asked this question again and again in different shapes and forms, and there must be an end to the examination; exception.[8]

Q. Did you, after you bought this property, go to Judge Stitzel and say, " Here, Judge, I have not got the property I bought?"

Objected to as immaterial.

Q. How long did it take you to find out that you did not receive what you bought?

Mr. Hiester: Objected to, because the plaintiff has twenty-one years to find out that he is outside of property that belongs to him.

By the court: We will allow this question; exception for the plaintiff.

Statement of Facts.

Mr. Ruhl: The plaintiff further objects that the witness is not the plaintiff in this case and he received no deed.

By the court: With this addition, we will sustain the objection; exception for the defendant.[9]

Charles Breneiser, Jr., recalled:

Q You say, two years afterwards you discovered you did not have what you bought? A. A year and one half or two years. Q. Did you then go to Judge Stitzel, and tell him you did not have all your land?

Mr. Ruhl: The plaintiff objects, that it is immaterial.

By the court: Objection sustained; exception.[10]

Q. You never made complaint to Judge Stitzel that he did not give you possession of all your land?

Mr. Ruhl: Objected to, that it is immaterial.

Mr. Bland: This for the purpose of proving that the witness, the plaintiff, received into possession what he thought and believed he was buying at the time of the sale, it having been shown that what he thought and believed he was then buying was the same which Judge Stitzel meant to sell to him; this, taken in connection with the mutual mistake, shown to have been made by the parties through an error of the scrivener in drawing the title deeds, presenting a case which, under the law, will justify the reformation of the deed.

Mr. Ruhl: Objected to, that it assumes a matter which has not been proven, namely, that there had been a mutual mistake; all the evidence shows the contrary.

By the court: Objection sustained; exception.[11]

George D. Stitzel, executor, recalled:

Q. The advertisement, the description of the property, and the description of the deed, do not agree with the lines of that lot marked off on the draft and with the fence? A. It appears not. Q. How does it come that the description in the deed does not agree with the draft by which you sold?

Mr. Hiester: The plaintiff objects to the inquiry as immaterial; it must be confined to acts and declarations.

By the court: Q. Is that your own writing? A. No, it is not; I do not know how the description got to be in that way; I could not answer that.

By Mr. Bland: Q. State whether or not it was right or wrong?

Charge of Court below.

By the court: That is not the question.

Mr. Bland: That is my question, and I want your honor to rule upon it.

Mr. Hiester: The plaintiff objects to the witness testifying whether he described the property as he intended to, or whether he described it different from the manner in which he intended to; the plaintiff's rights are not affected thereby.

By the court: Objection sustained; exception.[12]

Q. Who drew the advertisement? A. I think it was prepared in Mr. Stevens's office. Q. Was the advertisement correct so far as it describes No. 2, the property bought by Mr. Breneiser?

Mr. Hiester: The plaintiff objects for the same reason.

By the court: Objection sustained; exception.[13]

By Mr. Bland: Q. Was the description in the deed correct? That is to say, did it correspond with the property you meant to sell to Mr. Breneiser?

Mr. Hiester: The plaintiff objects because the intentions of the witness are immaterial.

By the court: Objection sustained; exception.[14]

At the close of the testimony showing the facts sufficiently appearing in Breneiser v. Davis, 134 Pa. 1, and indicated in the defendant's points, infra, the court, ERMENTROUT, P. J., charged the jury as follows:

When this case was up for trial on a previous occasion, this court made certain rulings and directed a verdict to be entered in favor of the defendant. The Supreme Court, passing in review, reversed this court, and in the opinion filed by them laid down the rules of law, which we are required to follow and which we will briefly state to you now as applicable to this case.

In the deed of the plaintiff, the property is described as containing in front, including an alley, 19 feet, 5 inches, and in depth 120 feet. This description of itself, without anything more, would be sufficient to vest the title to the premises in dispute in the plaintiff.

Under the will of Andrew Davis, deceased, George D. Stitzel, the executor, had power and authority to sell the whole of the real estate of Andrew Davis, in his discretion, for the best

price he could obtain. He had a right to cut up the lots. It was competent for him to make any division as in the exercise of reasonable discretion might seem best for the interests of the estate, and, having advertised, sold and conveyed this particular lot as 19 feet 5 inches in front, including an alley, and 120 feet back, the purchaser, in the absence of anything to restrict his right, would be entitled to hold to that boundary. The Supreme Court also held that the existence of a wooden fence within the lines defining the mode of the present enjoyment of the property, could not limit his right to the line upon which it stood, because it was in the executor's power to convey to any line he might establish, regardless of the evidence, and that neither the advertisement, the contract of sale, nor the deed called for the fence as the boundary. Mr. Breneiser having signed the conditions of sale, he received his deed with the description herein contained.

The defence is that it is founded upon an alleged mistake, and in order to avail the defendant there must be shown mutual mistake of the parties to the Breneiser deed. Davis having bought with notice of Breneiser's previous purchase, he stands in the same position as Mr. Stitzel; and in order to sustain his case, he must establish his claim by such proof as would justify a chancellor in reforming a deed. In this case, there is no evidence which, in the judgment of this court, is competent to show any mistake of a mutual nature by the parties to this Breneiser deed. The deed, therefore, stands for what it appears to be on its face. . . . .

We therefore direct the jury to find a verdict in favor of the plaintiff for the premises described in the writ.

The plaintiff requests the court to charge:

1. Under all the evidence in this case, the verdict must be for the plaintiff for the premises described in the writ

Answer: Affirmed.[15]

The defendant requests the court to charge:

1. If the jury believe, from all the evidence in the case, that Charles Breneiser, Sr., acting as agent for Charles Breneiser, Jr., the plaintiff here, went upon the premises of No. 140, which he purchased for Charles Breneiser, Jr., the plaintiff, from George D. Stitzel, executor of Andrew Davis, before the sale, and examined the premises with a view of buying them

Charge of Court below.

for the said Charles Breneiser, Jr., and saw the fence between properties Nos. 138 and 140, and believed it to be the line, and went to the sale believing that the property which he was buying at the sale was included within the line indicated by the fence; and if the jury find that George D. Stitzel, executor of Andrew Davis, intended at said sale to sell to the said Charles Breneiser, Sr., for the plaintiff here, Charles Breneiser, Jr., the lot appurtenant to property No. 140, at the time of the sale included within the said fence, and no more, the minds of the parties agreed upon the same thing; and if the jury further believe that George D. Stitzel subsequently made and executed a deed which, by an error of the scrivener, described the lot No. 140 as containing more land than was included at the time of the sale within the line indicated by the fence, the facts present a proper case for the reformation of the deed so erroneously made, so that the same shall conform to the lines indicated by the said fence and intended by the parties at the time of the sale.

Answer: Refused.[16]

2. Charles Breneiser, Sr., having testified that he purchased property No. 140 for the plaintiff, and that before he did so he visited the premises and inspected them, and saw the fence erected between properties Nos. 140 and 138, and believed that the said fence was the north line of property No. 140, and went to the sale and bought with that belief; and if the jury believe that George D. Stitzel, executor of Andrew Davis, at said sale intended to sell to the said Charles Breneiser, Sr., for the plaintiff, only the land included within the fence which Charles Breneiser, Sr., believed to be the north line of lot No. 140, then the minds of the parties agreed upon the same subject-matter of sale, the deed should be reformed, and the plaintiff is not entitled to recover.

Answer: Refused.[17]

3. Charles Breneiser, Sr., having purchased as agent for the plaintiff, and having testified that he read the advertisement of the sale before he bought, which advertisement contained the following notice to bidders: "A draft showing the exact measurement of lines and division of the property can be seen at the office of the attorney, and will also be shown at the sale;" and the draft mentioned in the advertisement having

Opinion of the Court.

been exhibited at the sale in compliance with the said adver-
tisement showing the exact measurement of lines and division
of the property in agreement with the dividing fence, which
then stood between the properties Nos. 140 and 138, it was the
duty of Charles Breneiser, Sr., to inspect the draft of which he
had notice through the advertisement, to ascertain the exact
measurement of the lines and division of the property; and he
will be held to have known at the time of the sale whatever he
would have learned of the measurement and division of the pro-
perty by an inspection of the draft.

Answer: Refused.[18]

—The jury returned a verdict for the plaintiff as directed.
Judgment having been entered, the defendant took this appeal,
assigning for error:

1–14. The refusal of the defendant's offers.[1 to 14]

15. The answer to the plaintiff's point.[15]

16–18. The answers to the defendant's points.[16 to 18]

*Mr. H. Willis Bland* (with him *Mr. J. Howard Davis* and
*Mr. S. M. Meredith*), for the appellant.

That a deed, with an erroneous description, may be reformed
so as to conform to the intentions of the parties at the time of
sale, counsel cited: Stafford v. Giles, 135 Pa. 417; Snyder v.
May, 19 Pa. 237; Hunt v. Rousmanier, 1 Pet. 1; Rowand v.
Finney, 96 Pa. 196; Young v. Edwards, 72 Pa. 267; Spencer
v. Colt, 89 Pa. 319; Barnhart v. Riddle, 29 Pa. 96.

*Mr. C. H. Ruhl* (with him *Mr. Daniel Ermentrout* and *Mr.
Isaac Hiester*), for the appellee.

Counsel cited: Cannon v. Boyd, 73 Pa. 182; Stiffler v.
Retzlaff, 20 W. N. 303.

PER CURIAM:

When this case was here upon a former appeal, Breneiser v.
Davis, 134 Pa. 1, it was said by our Brother CLARK, at the
conclusion of his opinion:

"The defence is founded upon an alleged mistake; a mutual
mistake of the parties to the Breneiser deed. Charles H. Davis,
having bought with notice of Breneiser's previous purchase,
stands in Stitzel's shoes, and in order to sustain his case, must

establish his claim by such proof as would justify a chancellor in reforming the deed. Equity will, in case of fraud or mistake, reform a written contract so as to make it conform to the intention of the parties: Snyder v. May, 19 Pa. 235; but the party alleging the mistake must establish it by clear, precise, and indubitable proofs: Stine v. Sherk, 1 W. & S. 195; Schettiger v. Hopple, 3 Gr. 54; Rowand v. Finney, 96 Pa. 192; Stewart's App., 98 Pa. 377; Logue's App., 104 Pa. 136; Sylvius v. Kosek, 117 Pa. 67."

Upon the former trial, the court below had given a binding instruction to find for the defendant. This we held to be error and sent the record down for another trial. We held that, under the terms of the deed, it carried the lot of an uniform width of nineteen feet five inches throughout its entire depth. It follows, that, unless upon the trial below there was sufficient evidence to reform the deed the verdict must be for the plaintiff. The court was of opinion, and so instructed the jury, that there was not evidence sufficient "to show any mistake of a mutual nature by the parties to this Breneiser deed. The deed, therefore, stands for what it appears to be on its face. We think this instruction was warranted by the testimony.

Nor do we find anything in the rejected offers of evidence which, if admitted, would have justified the reformation of this deed. It follows that the defendant's points, based upon the evidence, were properly refused.

Judgment affirmed.

